# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CAMPAIGN FOR FAMILY FARMS,                  Civil No. 99-1165 (JRT/FLN)
*et al.*

                           Plaintiffs,

v.

DAN GLICKMAN, Secretary                     **MEMORANDUM OPINION AND**
United States Department of Agriculture,    **ORDER GRANTING MOTION FOR**
                                            **PRELIMINARY INJUNCTION**
                           Defendant,

and

NATIONAL PORK PRODUCERS
COUNCIL,

                           Defendant-Intervenor.

---

Lynn A. Hayes and Karen R. Krub, FARMERS' LEGAL ACTION GROUP, INC. 1301 Minnesota Building, 46 East Fourth Street, St. Paul, MN 55101, for plaintiffs.

Friedrich A. P. Siekert, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; and Amy M. Allen, Assistant United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Civil Division, P.O. Box 883, Washington, DC 20044, for defendant.

William F. Forsyth and Scott A. Neilson, HENSON & EFRON, 1200 Title Insurance Building, 400 Second Avenue South, Minneapolis, MN 55401; and Edward M. Mansfield, BELIN LAMSON MCCORMICK ZUMBACK FLYNN, 2000 Financial Center, 666 Walnut Street, Des Moines, IA 50309, for defendant-intervenor.

The plaintiffs, an unincorporated association of hog farmers and several individual

hog farmers, seek a preliminary injunction to prevent the U.S. Department of Agriculture

FILED_____ SEP 2 0 1999

FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD_____
DEPUTY CLERK_____

("USDA") from releasing, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, information contained in a petition submitted to the USDA by plaintiffs.  At a

telephone conference on August 24, 1999, the USDA agreed not to release the information

until the Court rules on plaintiffs' motion.  The Court heard the arguments of the parties at

a hearing on September 10, 1999.  For the following reasons, the motion is granted.

## FACTS

Plaintiffs seek to enjoin a decision by the Agricultural Marketing Service ("AMS"),

an arm of the USDA.  In late July 1999, the AMS determined that FOIA required the release

of the names, addresses, phone numbers, and business names (collectively, the "petition

information") of individuals who signed a petition calling for a referendum on the

termination of the Pork Promotion, Research and Consumer Information Order.  This Order

instituted a mandatory checkoff program, by which pork producers contribute a percentage

of the proceeds from each hog sold into a fund that is used to promote pork.  Defendant-

intervenor National Pork Producers Council ("NPPC") and its affiliated associations receive

the majority of the funds generated by the checkoff program.[1]  *See* 7 U.S.C. § 4809.

The statute that established the checkoff program also provides that pork producers

may petition the Secretary of Agriculture to terminate the program.  *See* 7 U.S.C.

§ 4812(b)(1)(A).  A referendum on termination is held if 15% of the nation's pork producers

request it.  According to USDA practice, the referendum is conducted by secret ballot.  A

---

[1] According to plaintiffs, the checkoff program generated more than $40 million in 1998, and may generate more than $50 million in 1999.

simple majority of those participating in the secret ballot is required to terminate the program.

The so-called pork checkoff program has become quite controversial. Over the last several years, the nation's commodities markets have seen a substantial decline in the price for hogs. This decline has affected most severely individual farmers and other small producers of hogs, driving countless numbers of them out of business. The crisis has also precipitated a rebellion of sorts by small producers against what they see as an attempt to monopolize the market by large-scale producers, or so-called "factory farms." In the eyes of small producers, entities such as the NPPC have used the checkoff program money to assist the factory farms in their effort to monopolize the market.

More than 19,000 people signed the petition calling for a referendum that plaintiffs submitted to the USDA in May 1999. The USDA is currently in the process of ensuring that the signatures are valid, that is, that the individuals signing the petition were indeed pork producers within the relevant time period. In early July, the NPPC submitted a FOIA request to the USDA for the information contained in the petition. The USDA initially denied the request because the process of entering the petition information into a database was not complete. The NPPC renewed its request several weeks later, and the USDA determined that the petition information should be released pursuant to FOIA.

Plaintiffs argue that the release of the information poses a threat to the privacy of the petition signers, and thus that the Privacy Act, 5 U.S.C. § 552a, FOIA, and the First Amendment prohibit the release. Plaintiffs also claim that they will be subject to intimidation and retaliation if the information is made public. The USDA and the NPPC

- 3 -

maintain that neither the Privacy Act nor the First Amendment applies to plaintiffs' claims, and that FOIA mandates the release of the information.

## DISCUSSION

Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is considered to be a "drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above, *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

### 1.      Likelihood of Success

An agency's decision that FOIA requires the disclosure of information is subject to review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702 *et seq. See Chrysler Corp. v. Brown*, 441 U.S. 281, 318 (1979). Section 706 of the APA allows a Court to set aside an agency decision if that decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs contend that the USDA's decision to release the petition information is "not in accordance with law" because: (1) the decision failed to consider the relevant factors, as required by Supreme Court precedent; (2) exemption 6 of FOIA prohibits the release of the petition

- 4 -

information; (3) the Privacy Act prohibits the release of the information; and (4) plaintiffs'
First Amendment rights will be violated by the release of the information.

An agency's decision violates § 706 of the APA if that decision is not "based on a
consideration of the relevant factors." *Ringsred v. Dole*, 828 F.2d 1300, 1302 (8th Cir. 1987)
(quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).  The
factors the USDA failed to consider, according to plaintiffs, are those outlined in *United
States Department of State v. Ray*, 502 U.S. 164 (1991).  In that case, the Supreme Court
instructed agencies faced with a request to release a list of names to consider "the
characteristic(s) revealed by virtue of being on the particular list, and the consequences likely
to ensue [if the list is released]." *Ray*, 502 U.S. at 176 n.12.  Plaintiffs argue that the USDA
neglected to consider that release of the petition information will reveal the signers' position
on termination of the controversial checkoff program.  Plaintiffs also contend that the USDA
failed to consider the consequences to the signers if their position on the checkoff program
is made public.

A review of the administrative record shows that USDA based its decision to release
the petition information on precedent regarding the release of lists of names of all growers
of a certain product.  *See* Kerr Decl. Ex. 1 at 00001 (USDA decision on NPPC's FOIA
request).  In *Ivanhoe Citrus Association v. Handley*, 612 F. Supp. 1560 (D.D.C. 1985), for
instance, a legal foundation sought a list of names and addresses of orange growers.  *Ivanhoe
Citrus*, 612 F. Supp. at 1562.  The court upheld the agency's decision to release the list
because the list did "not identify the particular information furnished" by the individual
growers.  *Id.* at 1565.  Similarly, in *Washington Post Co. v. United States Department of*

*Agriculture*, 943 F. Supp. 31 (D.D.C. 1996), the court held that FOIA required the USDA to release a list of the names of recipients of cotton subsidies, because the list contained only "relatively generic facts – names, business addresses and amounts of subsidy – that reveal no damaging or sensitive information and that pertain to tens of thousands of otherwise indistinguishable businesspeople." *Washington Post*, 943 F. Supp. at 36.

Plaintiffs insist that the "list of names" cases are inapposite. They argue that the instant situation is more closely analogous to cases dealing with the disclosure of the names of employees favoring union representation. *E.g.*, *Madeira Nursing Center, Inc. v. NLRB*, 615 F.2d 728 (6th Cir. 1980); *Pacific Molasses Co. v. NLRB*, 577 F.2d 1172 (5th Cir. 1978). In these cases, the courts held that an employee's right of privacy in his or her opinion with respect to union representation was of paramount importance, so that release of the employees' names was inappropriate.

While the Court is not convinced that the disclosure of the petition information here is directly analogous to the disclosure of employees' names in the union cases, this case is more similar to the union cases than it is to the "list of names" cases. The petition information is not benign or "generic." Rather, it reveals precisely where the signer stands on the controversial issue of the pork checkoff program. Moreover, disclosure of the petition information may subject the petition signers to retaliation and harassment. The USDA should have considered these factors when determining whether to release the petition information.

The USDA maintains that it did consider the characteristics revealed by the petition information, as well as any consequence likely to ensue from disclosure of that information.

It is clear from the administrative record that this consideration was cursory at best. *See* Kerr Decl. Ex. 1 at 00002 (stating that the only information revealed by disclosure of the petition information is that the signer is a pork producer). Had the USDA truly considered the relevant factors, it would have concluded that disclosure of the petition information will reveal sensitive and private information about the petition signers. The USDA itself concedes the privacy of the information involved in the mere fact that it will conduct a secret ballot on the termination of the checkoff program. If the information was indeed public, as the USDA and the NPPC insist it is, such secret balloting would be unnecessary. Likewise, the USDA's superficial determination that the petition signers will suffer no consequences from disclosure of the petition information is questionable. The affiants aver that they have suffered consequences in the past from taking public positions on less controversial matters. *See, e.g.*, Skalbeck Decl. ¶ 6; Joens Decl. ¶ 5; Perry Decl. ¶ 6. Should the petition information be made public, it is not unreasonable to assume that those entities with a financial stake in the pork checkoff program will use that information to attempt to influence the referendum vote.

The Court finds that plaintiffs have shown a likelihood of success on their claim that USDA failed to consider the following relevant factors: (1) the characteristic revealed by the petition information, specifically, the signer's support for the termination of the pork checkoff program, and (2) the consequences likely to ensue from release of that information. Plaintiffs therefore have shown a likelihood of success on their claim that the USDA's decision to release the petition information is not in accordance with law, and as such, the decision violates § 706. At this preliminary stage of the litigation, and for the purposes of

analysis under the *Dataphase* factors, it is unnecessary for the Court to reach plaintiffs' remaining claims.

## 2.    Irreparable Harm

Plaintiffs have also succeeded in showing that they will be irreparably harmed in the absence of the injunction they seek.  Once the petition information is revealed, that information can never again be private.  The damage to the signer's privacy interest is irretrievable.  Furthermore, plaintiffs have alleged that they face the threat of injury to their businesses if the petition information is made public.  In this time of crisis in the hog farming industry, few pork producers can withstand any further threat to their ability to make money. Plaintiffs have met their burden of showing irreparable harm.

## 3.    Balance of Harms

The NPPC alleges that it will be harmed by the issuance of an injunction because it will be unable to ensure that the USDA's validation process is correct.  The NPPC has other means to oversee the validation process, however, including requesting a copy of the list of hog producers against which the USDA will compare the petition information, and challenging those names the NPPC believes are not legitimate pork producers.  Moreover, any harm suffered by the NPPC is certainly outweighed by the threat of irreparable harm to the plaintiffs.  The balance of harms weighs in favor of the injunction.

4.      **Public Interest**

The public interest lies in ensuring that an agency's decision does not violate the APA. Because plaintiffs have shown a likelihood of success on their claim that the USDA's decision was contrary to the APA, the public interest lies in the issuance of an injunction.

## ORDER

Based on the foregoing, and all of the records, files, and proceedings herein, **IT IS HEREBY ORDERED:**

1.      Plaintiffs' motion for a preliminary injunction [Docket No. 2] is **GRANTED**.

2.      Defendant is **ENJOINED** from releasing to defendant-intervenor or to any other person or entity the information contained in the petition submitted to the USDA by the Campaign for Family Farms in May 1999.

3.      Pursuant to Rule 65(c), Fed. R. Civ. P., this Order shall become effective upon plaintiff posting a bond of $500.00 with the Clerk of Court for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined.

Dated:   September **20** , 1999.

JOHN R. TUNHEIM

United States District Judge

- 9 -